IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:22-MJ-1031-RJ

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| JONATHAN W. SPEENER, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on Defendant Jonathan Speener's ("Speener") renewed motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(a). Speener moved for acquittal after the close of all evidence during a bench trial that began on December 13, 2023 and concluded on March 7, 2024. The Government opposes the motion. For the reasons that follow, the motion is denied.

**I.    Background**

On October 12, 2020, the Government issued a violation notice charging Speener with distributing bait and hunting over bait in violation of 16 U.S.C. § 668dd and 50 C.F.R. 32.2(h), aiding and abetting others to take without authorization in violation of 16 U.S.C. § 668dd and 50 C.F.R. 27.21 and trespassing on a national wildlife refuge in violation of 16 U.S.C. § 668dd and 50 C.F.R. 26.21(a). [DE-1]. The court commenced a bench trial on December 13, 2023, where the Government presented its case in chief. At trial, the court heard testimony from United States Fish and Wildlife Service Officer Dustin Martin. Officer Martin testified that, while patrolling Currituck Wildlife Refuge, he discovered a baited tree stand. As hunting with bait is prohibited on the Refuge and Officer Martin suspected that the stand was in active use, he began to monitor the area. Through these surveillance efforts, he identified Jeremy Wilkins and Jonathan Speener as

his primary suspects. He also recovered a video of Speener spreading approximately fifty pounds of corn in front of the tree stand, [Gov't's Ex. 1], and a picture of Wilkins walking through the corn that Speener had dumped on the ground, [Gov't's Ex. 2]. Time stamps indicated that the video was captured on October 12, 2020 at approximately 4:30 p.m.

Officer Martin explained that there is a parking lot used by authorized hunters to access the Refuge, but that Wilkins and Speener did not use this entrance. Instead, they parked Wilkins's vehicle and entered the Refuge in an area without posted signage, [Gov't's Ex. 3], about fifty yards from the parking lot. In this area, the Refuge's boundaries are indicated by U.S. Fish and Wildlife Service boundary markers, [Gov't's Ex. 4], and a barbed wire horse exclusion fence, [Gov't's Ex. 5]. On cross examination, Officer Martin clarified that this access point is located between the boundary markers and horse exclusion fence. He also stated that the boundary markers face outward from the Refuge and are not marked on the reverse side.

Officer Martin testified that for Wilkins and Speener to have reached the tree stand from the area where Wilkins's vehicle was parked, they would have had to cross the horse exclusion fence. This is because the fence runs the entire length of the Refuge, and the only gap in the fence is located by the parking lot. Officer Martin explained that on October 12, 2020, he found footprints crossing through the fence line by Wilkins and Speener's access point that supported this theory, and conversely, found no footprints running from the tree stand area to the gap in the fence. He also stated that on that day, he observed Wilkins's belongings on the opposite side of the fence, indicating that he had crossed over it to access the Refuge.

After the Government rested its case, Speener moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29(a). The court issued its ruling denying the requested relief to the parties in a hearing held on January 11, 2024 and memorialized its ruling in a written order dated January 30,

2

2024. [DE-34]. The bench trial then resumed on March 7, 2024, and Speener presented his case in chief. The court heard testimony from Jeremy Wilkins, who also received a citation from Officer Martin because of the events that transpired on October 12, 2020, and pleaded guilty to the charges.

Wilkins testified that he and Speener met in early 2020, when Speener was living in Northern Virginia. Prior to October 12, the pair had only hunted together a couple times, but not on the Refuge. Wilkins explained that he had previously hunted on the Refuge and knew it was federal land. However, Wilkins did not disclose that fact to anyone else because, according to Wilkins, if others knew that the land was public, they would also want to hunt there. Instead, Wilkins told Speener and others that a private landowner had given him permission to hunt on the land, and only revealed the truth to Speener after he received the citation on October 12.

Earlier that afternoon, Wilkins and Speener drove Wilkins's truck to the Refuge and parked in the area shown in Gov't's Ex. 3. Wilkins confirmed that there are orange survey markers to the right of the parking area; originally, he stated that he thought they were "just cable line markers" but admitted on cross examination that they technically parked within the Refuge's boundaries. The pair planned for Wilkins to hunt on the Refuge and for Speener to drive Wilkins's truck to a further plot of land and hunt there. According to Wilkins, after parking the truck, Speener offered to help carry Wilkins's gear and bag of corn to the tree stand that he used to hunt on the Refuge. Wilkins accepted his offer and admitted that at that point, they both crossed under the barbed wire fence to access the Refuge. He also acknowledged that Speener spread corn in front of the tree stand.

After further questioning by counsel, Wilkins testified that Speener was only on the Refuge for fifteen to thirty minutes. Wilkins does not recall whether Speener asked about the barbed wire fence before they crossed over it. However, Wilkins also explained that he has hunted for the past

3

seven years or so, and that in that time, he has hunted on both private and public lands. In his experience, it is not unreasonable to encounter a fence on private property. However, he has not encountered fences on any other public lands besides the Refuge.

In closing arguments, Speener raised the same argument that he raised after the close of the Government's evidence. That is, Speener still contends that the Government has failed to prove beyond a reasonable doubt that he had the requisite mens rea for conviction under 16 U.S.C. § 668dd(f)(2), the statutory authority for the relevant regulations. Specifically, Speener asserts that the Government is required to prove that he was at least negligent in distributing bait and hunting over bait in violation of 16 U.S.C. § 668dd and 50 C.F.R. 32.2(h), aiding and abetting others to take without authorization in violation of 16 U.S.C. § 668dd and 50 C.F.R. 27.21 and trespassing on a national wildlife refuge in violation of 16 U.S.C. § 668dd and 50 C.F.R. 26.21(a), and that it has not met this burden. Speener asserts that he did not knowingly or negligently enter Currituck National Wildlife Refuge, and the Government has failed to prove that he did so. The Government argues that § 668dd(f)(2) authorizes strict liability for the relevant regulatory offenses, and thus, Speener can be convicted of all three without proof of scienter; and in the alternative, that Speener's conduct on October 12, 2020 was at least negligent.

## II. Standard of Review

As established by the Fourth Circuit, the standard for deciding a motion for judgment of acquittal is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982) (citing cases). When assessing the sufficiency of the trial evidence, the court "must view both 'the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the

4

Government.'" *United States v. Santana*, No. 2:06cr172, 2008 WL 276411, at *1 (E.D. Va. Jan. 28, 2008) (quoting *United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996) (en banc)). The relevant question for the court is whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Myers*, 280 F.3d 407, 415 (4th. Cir. 2002)). Stated differently, a Rule 29 motion should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id.* In its deliberation, the court should consider the evidence in totality, not in isolation, and the Government need not negate every theory of innocence. *See United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

**III.    Discussion**

Title 16 U.S.C. § 668dd was enacted "[f]or the purpose of consolidating the authorities relating to the various categories of areas that are administered by the Secretary for the conservation of fish and wildlife, including . . . wildlife refuges." § 668dd(a)(1). The penalties provision is divided into two distinct subsections: (f)(1), which pertains to knowing violations, and (f)(2), which pertains to "other violations." *Id.* at (f). Subsection (f)(1) provides that "[a]ny person who *knowingly* violates or fails to comply with any of the provisions of this Act . . . shall be fined under Title 18 or imprisoned for not more than 1 year, or both." *Id.* at (1) (emphasis added). Subsection (f)(2), on the other hand, lacks specific scienter language and simply mandates that "[a]ny person who otherwise violates or fails to comply with any of the provisions of this Act (including a regulation issued under this Act) shall be fined under Title 18 or imprisoned not more than 180 days, or both." *Id.* at (2).

Speener argues that despite the lack of scienter language in § 668dd(f)(2), the provision requires the Government to prove mens rea. In support, he cites two out-of-circuit cases: *United*

5

*States v. Mast*, 938 F.3d 973 (8th Cir. 2019) and *United States v. Kenner*, 238 F. Supp. 3d 1157 (D. Neb. 2017). Both *Mast* and *Kenner* involved the prosecution of regulatory violations under 16 U.S.C. § 668dd(f)(2), and in both cases the court held that (f)(2) requires the government to prove that the defendant acted with at least negligence. *Mast*, 938 F.3d at 977; *Kenner*, 238 F. Supp. 3d at 1164. As the *Mast* court noted, "our system of law acknowledges the 'universal', 'persistent' principle that 'wrongdoing must be conscious to be criminal,'" *Mast*, 938 F.3d at 975 (quoting *Elonis v. United States*, 575 U.S. 723, 734 (2015)). Thus, "[o]nly when the statute indicates, expressly or through implication, that Congress intended 'to dispense with *mens rea* as an element of the crime' is it appropriate to treat the statute as setting out a strict liability offense." *Id.* at 975–76 (citing *Staples v. United States*, 511 U.S. 600, 606 (1994)) (emphasis in original). As for what constitutes conscious wrongdoing, prior on-point cases have defined simple negligence as "an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another." *Kenner*, 238 F. Supp. 3d 1157, 1163 (citing *United States v. Best*, 2012 WL 3027544 at *5 (N.D. Cal. 2012) (citing and quoting *Restatement (Second) of Torts* § 284 (1965) (internal quotation marks omitted))); *see also Mast*, 938 F.3d at 977 ("[n]egligence requires only that the defendant should have been aware of a substantial and unjustifiable risk") (citing *Elonis*, 575 U.S. at 745) (Alito, J., concurring in part and dissenting in part)).

The Fourth Circuit has not yet interpreted § 668dd(f)(2), but it has found that similar statutes impose strict liability. *See United States v. Boynton*, 63 F.3d 337, 344 (4th Cir. 1995) (finding no evidence of intent required to prove a misdemeanor violation of the Migratory Bird Treaty Act). Notably, in *Tait v. United States*, 763 F. Supp. 786, 791 n.5 (E.D. Va. 2011), one district court specifically addressed the scienter requirements of § 668dd (f)(2) in dicta. There, the court remarked that "the plain language of [§ 668dd(f)(2)] (which has no 'knowledge'

6

requirement) and the legislative history . . . show that Congress intended to criminalize such behavior, even when the perpetrator unintentionally committed the act." *Id.* In other words, the *Tait* court would have interpreted (f)(2) as imposing strict liability.

In the instant case, the court declined to decide the strict liability question in its order dated January 30, 2024, stating that a rational trier of fact could find that even if the Government did not prove mens rea sufficient for conviction under § 668dd(f)(1), it had met its burden of proof on mens rea under either a strict liability or negligence regime sufficient for conviction under § 668dd(f)(2). [DE-34] at 5–6. Specifically, the court noted,

> Speener's central argument is that he was unaware that he was present on a national wildlife refuge. As Officer Martin testified at trial, the horse exclusion fence runs the length of the Refuge's boundary line, and its only gap is located approximately fifty yards away, by the parking lot that Wilkins and Speener did not use to enter the Refuge. Officer Martin testified that from Wilkins' and Speener's access point, they would have had to cross through the fence to reach the tree stand. Additionally, Officer Martin stated that he found footprints on October 12, 2020 that crossed from the access point, through the fence, to the tree stand area, and conversely, found no footprints that crossed from the tree stand area to the gap in the fence. Lastly, Officer Martin described observing Wilkins's personal property on the other side of the fence on that date, indicating that he and Speener had passed through it.
>
> Other courts have found that "[a] prudent person should recognize when they jump [a] fence, . . . they are probably entering an area or areas where they aren't welcomed." *See Best*, 2012 WL 3027544 at *6 (finding defendant was negligent where he jumped two fences, including one barbed wire fence, to enter a wildlife refuge). Accordingly, whether § 668dd(f)(2) requires the Government to prove mens rea or strict liability, under the circumstances presented, a rational trier of fact could find that the Government has presented sufficient evidence to support a conviction as to Speener's state of mind.

*Id.* Now, at the close of all evidence, Speener maintains that both § 668dd(f)(1) and § 668dd(f)(2) require the Government to prove mens rea, and asserts that in light of Wilkins's trial testimony, the Government has failed do so. The Government counters that Congress intended for § 668dd(f)(2) to require strict liability only, and alternatively, that Speener's willful ignorance on October 12, 2020 is sufficient to establish simple negligence.

7

Considering the Fourth Circuit's treatment of an analogous statute in *Boynton* and the *Tait* court's acknowledgement that it would interpret § 668dd(f)(2) as imposing strict liability, the court finds that the Government is not required to prove mens rea to establish violations of § 668dd(f)(2) and its associated regulations. *See Boynton*, 63 F.3d at 344; *Tait*, 763 F. Supp. at 791 n.5. Viewing the evidence in the light most favorable to the Government, *Santana*, 2008 WL 276411, at *1, Speener has admitted—and Wilkins's trial testimony has confirmed—that he was physically present on the Currituck National Wildlife Refuge on October 12, 2020 and spread corn as bait for Wilkins to hunt over. Accordingly, there is substantial evidence that would warrant a jury finding that Speener is guilty of distributing bait in violation of 16 U.S.C. § 668dd and 50 C.F.R. 32.2(h), aiding and abetting others to take without authorization in violation of 16 U.S.C. § 668dd and 50 C.F.R. 27.21 and trespassing on a national wildlife refuge in violation of 16 U.S.C. § 668dd and 50 C.F.R. 26.21(a) beyond a reasonable doubt. *See MacCloskey*, 682 F.2d at 473.

### IV. Conclusion

For the reasons stated above, Defendant's renewed motion for judgment of acquittal under Fed. R. Crim. P. 29(a) is denied.

SO ORDERED, this the 29th day of March, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge

8

Case 2:22-mj-01031-RJ   Document 37   Filed 04/01/24   Page 8 of 8